UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Paul Quatinetz, individually and on behalf of a class<br><br>Plaintiff,<br><br>v.<br><br>Eco Shield Pest Control New York City, LLC; and Optio Solutions LLC<br><br>Defendants. | Civil Action No. 7:19-cv-08576-CS |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
*Attorney for Plaintiffs*

S, Wexler, LLC
2244 Henderson Mill Road, Suite 108
Atlanta, GA 30345
*Attorney for the Plaintiffs*

*On the brief:*
Ryan Gentile, Esq.

## TABLE OF CONTENTS

Table of Authorities…………………………………………………...……………………..iii

INTRODUCTION……………………………………………………………………...1

SUMMARY OF THE SETTLEMENT…………………………………………………...2

I.    The Settlement Provides Monetary Compensation For Each Class Member…………2

II.    The Settlement Agreement Provides For Direct Mail Notice To All Class Members..3

LEGAL ARGUMENTS……………………………………………………………………...3

I.    The Proposed Class Meets All The Elements For Certification Under Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(3)…………………………………………3

    A.  The Class Members Are Ascertainable…………………………………………3

    B.  Numerosity Is Satisfied……………………………………………………………4

    C.  Commonality Is Satisfied…………………………………………………………5

    D.  Typicality Is Satisfied……………………………………………………………6

    E.  Adequacy Is Satisfied……………………………………………………………..7

    F.  Common Questions of Law or Fact Predominate…………………………………9

    G.  A Class Action Is Superior To Other Methods To Adjudicate The Controversy....10

    H.  Conclusion……………………………………………………………………11

II.    Standard For Preliminary Approval Of A Class Settlement…………………………12

III.    The Proposed Settlement Meets All The Requirements Set Forth In Grinnell And Prudential As Well As The Factors Set Forth In Fed. R. Civ. P. 23(e)(2)…………...13

    A.  The Settlement Satisfies The Grinnell Factors………………………………13

        1.  The First Grinnell Factor: The Complexity, Expense And Likely Duration Of The Litigation……………………………………………13

        2.  The Second Grinnell Factor: The Reaction Of The Class To The Settlement……………………………………………………………..15

3.   The Third Grinnell Factor: The Stage Of The Proceedings And The Amount Of Discovery Completed……………………………………15

4.   The Fourth And Fifth Grinnell Factors: The Risks Of Establishing Liability & The Risks Of Establishing Damages………………………..15

5.   The Sixth Grinnell Factor: The Risks Of Maintaining The Class Action Through The Trial……………………………………………16

6.   The Seventh Grinnell Factor: The Ability Of The Defendant To Withstand A Greater Judgment……………………………………19

7.   The Eighth And Ninth Grinnell Factors: The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery & The Range Of Reasonableness Of The Settlement Fund To A Possible Recovery In Light Of All The Attendant Risks Of Litigation…………..19

B.   The Proposed Settlement Satisfies The Factors Set Forth In Rule 23(e)(2)…21

C.   Conclusion…………………………………………………………..22

IV.   This Court Should Approve The Proposed Notice To Class Members……………..23

V.   This Court Should Schedule A Final Fairness Hearing………………………………..24

CONCLUSION……………………………………………………………………24

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE(S)**

Amchem v. Windsor,
    521 U.S. 591 (1997)……………………………………………………...7, 9

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    222 F.3d 52 (2d Cir. 2000)………………………………………………………...7

Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.,
    2016 WL 4766079 (E.D. Pa. Sept. 13, 2016)………………………………………18

Bolanos v. Norwegian Cruise Lines Ltd.,
    212 F.R.D. 144 (S.D.N.Y. 2002)……………………………………………………5

Bourlas v. Davis Law Assocs.,
    237 F.R.D. 345 (E.D.N.Y. 2006)…………………………………………………...18

Campos v. Goode,
    2011 WL 9530385 (S.D.N.Y. Mar. 2011)…………………………………………19

City of Detroit v. Grinnell Corp.,
    495 F.2d 448 (2d Cir. 1974)……………………………………………………..passim

Consol. Rail Corp. v. Town of Hyde Park,
    47 F.3d 473 (2d Cir. 1995)………………………………………………………...4, 5

Damassia v. Duane Reade, Inc.,
    250 F.R.D. 152 (S.D.N.Y. 2008)……………………………………………………5

Dunnigan v. Metro. Life. Ins. Co.,
    214 F.R.D. 125 (S.D.N.Y. 2003)……………………………………………………4

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974)……………………………………………………………...23

Frank v. Eastman Kodak Co.,
    228 F.R.D. 174 (W.D.N.Y. 2005)…………………………………………………20

Gen. Tel. Co. of Sw. v. Falcon,
    457 U.S. 147 (1982)………………………………………………………………6

Hale v. State Farm Mutual Automobile Ins. Co.,
    2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)………………………………………22

Hall v. Frederick J. Hanna & Assocs., P.C.,
    2016 WL 2865081 (N.D. Ga. May 10, 2016)…………………………………………18

Hamelin v. Faxton-St. Luke's Healthcare,
    274 F.R.D. 385 (N.D.N.Y. 2011)……………………………………………………….4

In re Cendant Corp. Litig.,
    264 F.3d 201 (3d Cir. 2001)…………………………………………………………...14

In re Drexel Burnham Lambert Grp.,
    960 F.2d 285 (2d Cir. 1992)……………………………………………………………..6

In re Initial Public Offerings Sec. Litig. (In re IPO),
    471 F.3d 24 (2d Cir. 2006)…………………………………………………………...…..4

In re PaineWebber Ltd. P'ships Litig.,
    171 F.R.D. 104 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997)…………………...16

In re Petrobras Sec.,
    862 F.3d 250 (2d Cir. 2017)…………………………………………………………….9

In re Risk Mgmt. Alts., Inc., Fair Debt Collection Practices Act Litig.,
    208 F.R.D. 493 (S.D.N.Y. 2002)……………………………………………………...11

In re Wal-Mart Stores, Inc. Wage and Hour Litig.,
    2008 WL 1990806 (N.D. Cal. May 5, 2008)………………………………………………23

In re Warner Comm. Sec. Litig.,
    618 F. Supp. 735 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986)…………………..15

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,
    2011 WL 1434679 (N.D. Ohio 2011)……………………………………………………18

Lapin v. Goldman Sachs & Co.,
    254 F.R.D. 168 (S.D.N.Y. 2008)……………………………………………………….5

Lewis Tree Serv., Inc. v. Lucent Techs., Inc.,
    211 F.R.D. 228 (S.D.N.Y. 2002)……………………………………………………….5

Maddon v. Midland Funding, LLC
    237 F. Supp. 3d 130 (S.D.N.Y. 2017)……………………………………………...11

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997)…………………………………………………………5, 6

Morris v. Affinity Health Plan, Inc.,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)……………………………………………..20

Newman v. Stein,
    464 F.2d 689 (2d Cir. 1972)……………………………………………………20

Officers for Justice v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982)……………………………………………………20

Roach v. T.L. Cannon Corp.,
    778 F.3d 401 (2d Cir. 2015)………………………………………………………9

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993)……………………………………………………..7

Schell v. Frederick J. Hanna & Assocs., P.C.,
    2016 WL 1273297 (S.D. Ohio Mar. 31, 2016)……………………………………18

Schuchardt v. Law Office of Rory W. Clark,
    314 F.R.D. 673 (N.D. Cal. 2016)………………………………………………...18

Shepherd v. Law Offices of Cohen LLP,
    668 F. Supp. 2d 579 (S.D.N.Y. 2009)…………………………………………...17

Stinson v. City of New York,
    282 F.R.D. 360 (S.D.N.Y. 2012)…………………………………………………4

Trief v. Dun & Bradstreet Corp.,
    144 F.R.D. 193 (S.D.N.Y. 1992)…………………………………………….…5

Tyson Foods, Inc. v. Bouaphakeo,
    136 S.Ct. 1036 (2016)……………………………………………………………9

Waggoner v. Barclays PLC,
    875 F.3d 79 (2d Cir. 2017)………………………………………………………9

Whitford v. Weber & Olcese, P.L.C.,
    2016 WL 122393 (W.D. Mich. Jan. 11, 2016)……………………………………18

Woods v. Sieger, Ross & Aguire, LLC,
    2012 WL 1811628 (S.D.N.Y. May 18, 2012)…………………………………...17

Yedlowski v. Roka,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016)……………………………………...14

## **STATUTES**

15 U.S.C. § 1692k(a)(2)(B)…………………………………………………………………...16

15 U.S.C. § 1692k(a)(2)(B)(i)……………………………………………………………………3

15 U.S.C. § 1692k(b)(2)…………………………………………………………………………18

New York's General Business Law §349……………………………………………1, 6, 7

New York's General Business Law §349(h)……………………………………………17

## **RULES**

Fed. R. Civ. P. 23(a)(1)…………………………………………………………………………4

Fed. R. Civ. P. 23(a)(2)…………………………………………………………………………5

Fed. R. Civ. P. 23(a)(3)…………………………………………………………………………6

Fed. R. Civ. P. 23(a)(4)…………………………………………………………………………7

Fed. R. Civ. P. 23(b)(3)……………………………………………………………9, 10, 11

Fed. R. Civ. P. 23(c)(2)(A)……………………………………………………………………23

Fed. R. Civ. P. 23(c)(2)(B)……………………………………………………………………23

Fed. R. Civ. P. 23(e)………………………………………………………………………12, 22

Fed. R. Civ. P. 23(e)(1)(B)……………………………………………………………………23

Fed. R. Civ. P. 23(e)(2)………………………………………………………………………13

Fed. R. Civ. P. 23(e)(2)(D)……………………………………………………………………22

Fed. R. Civ. P. 23(f)………………………………………………………………………...19

Fed. R. Civ. P. 23(g)……………………………………………………………………8, 9

**AUTHORITIES**

4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS,

    § 11.25 (4th ed. 2002)………………………………………………………………12

Fed. R. Civ. P. 23(e), advisory committee's note (2018)…………………………………22

MANUAL FOR COMPLEX LITIGATION § 21.312……………………………………..23

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004)…………………………..12

MANUAL FOR COMPLEX LITIGATION § 21.632-33………………………………………12

MANUAL FOR COMPLEX LITIGATION § 21.633-34………………………………………12

## **INTRODUCTION**

This case centers on the alleged deceptive practices of Eco Shield Pest Control New York City LLC ("Eco Shield") and Optio Solutions LLC ("Optio") (collectively Eco Shield and Optio are hereinafter referred to as "Defendants"). In their amended complaint, the Plaintiff alleges that Eco Shield added a "collection fee" of $15 to any consumer's account with Eco Shield if said account was referred to a collection agency, including but not limited to Optio. Plaintiff's amended complaint alleges that this action violates Section 349 of New York's General Business Law ("GBL") because the underlying contract that Eco Shield has with its customers does not allow Eco Shield to add any collection fee or other similar charge to any account that Eco Shield refers to a collection agency, nor does any legal statute allow for the imposition of this $15 fee. Plaintiff also alleges that Optio violated the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 *et seq*. ("FDCPA") and GBL when it sought to collect this $15 fee from consumers on behalf of Eco Shield.  Defendants both deny any liability or that the practices alleged by the Plaintiff in the amended complaint violated either the GBL or FDCPA.

Following over one year of litigation, including this Court denying a motion to dismiss filed by the Defendants and the parties conducting discovery, the parties reached an agreement to resolve this matter whereby Defendants will create a settlement fund of $22,159.70 for the benefit of the 472 members of the class. As a result, each participating class member will receive $46.95 – an amount well in line with analogous class settlements under the GBL and FDCPA. In addition, and separate from the settlement fund so as not to dilute class members' recoveries, Defendants also will pay: (1) all costs of class notice and settlement administration, which will include the mailing of notice to each class member of the settlement and the $46.95 checks; (2) full statutory damages under the FDCPA of $1,000 to the named Plaintiff, along with $500 as an

incentive award to Plaintiff for his work on behalf of the class, subject to court approval; and (3) class counsel's reasonable attorneys' fees, costs, and expenses up to $40,000, subject to court approval. The parties Class Action Settlement Agreement and Release (the "Settlement Agreement") is attached as **Exhibit A** to the attached Declaration of Ryan Gentile, Esq, and details this and the other terms the Parties' Settlement Agreement.

It is respectfully submitted that when considering the statutorily limited damages available to the settlement class under the GBL and FDCPA, the risks of continued litigation, the nature of Defendants' conduct and Plaintiff's allegations, as well as the prospective relief afforded by the Settlement Agreement, that the Settlement Agreement represents an excellent result for class members. Accordingly, Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the Settlement Agreement and directing the notice program described herein. Defendants do not oppose the relief Plaintiff requests through this motion.

## SUMMARY OF THE SETTLEMENT

### I.  **The Settlement Provides Monetary Compensation For Each Class Member.**

Plaintiff seeks to certify a class defined as:

> (a) all individuals (b) with a New York address (c) that Defendants attempted to collect and/or asserted a right to collect, a collection fee from in addition to any amount Eco Shield claimed such individual owed them (d) from September 16, 2016 through September 16, 2019.

Defendants represent that there are 472 class members, including Plaintiff.

The Settlement Agreement provides that Defendants will create a settlement fund of $22,159.70 with $46.95 paid to each class member who does not exclude himself or herself from the settlement. To the extent any settlement checks go uncashed after 90 days, the unclaimed funds will be returned to Defendants.

2

Additionally, in addition to the foregoing, and separate and apart from the settlement fund, Defendants will pay $1,000 to Plaintiff as additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), and an additional $500 to Plaintiff as an incentive award for his service to the class. Defendants will also pay the costs of notice and administration of the settlement and an award of reasonable attorneys' fees and expenses not to exceed $40,000.

## II.    The Settlement Agreement Provides For Direct Mail Notice To All Class Members.

The Settlement Agreement requires an ample notice program consisting of direct mail notice to each member of the class. Defendants have in their possession the names and recent addresses of each class member. The settlement administrator will take all reasonable steps necessary to ensure that each class member receives direct mail notice.

To that end, the parties have selected Phoenix Class Action Administration Solutions, a third party, to act as the settlement administrator. Phoenix Class Action Administration Solutions is an experienced settlement administrator that has previously been approved to administer class action settlements.

Class members wishing to receive a settlement check will not need to take any action. That is, unless a class member excludes himself or herself from the settlement, that class member will receive $46.95.

## LEGAL ARGUMENTS

## I.    The Proposed Class Meets All The Elements For Certification Under Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(3).

### A.  The Class Members Are Ascertainable.

Prior to determining whether the requirements of Rule 23 have been met, this Court must first analyze whether the proposed class is ascertainable. Although it is "not explicitly spelled out

in Rule 23, courts in this circuit have added an 'implied requirement of ascertainability' with respect to the class definition." Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 393 (N.D.N.Y. 2011)(quoting In re Initial Public Offerings Sec. Litig. (In re IPO), 471 F.3d 24, 30 (2d Cir. 2006)). Specifically, courts have required that "a class be identifiable before it may be properly certified." Id. at 396 (citing Dunnigan v. Metro. Life. Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." Stinson v. City of New York, 282 F.R.D. 360, 367 (S.D.N.Y. 2012) (internal quotation marks and citation omitted)

Plaintiff's proposed class definition is ascertainable because Defendants have identified 472 persons who meet the proposed class definition, and therefore the members of the proposed class can be ascertained by reference to objective criteria. These 472 individuals, who have been ascertained and identified by Defendants through a search of their own business records, are the members of the proposed class. Therefore, it is respectfully submitted that Plaintiff has met their burden of showing that the proposed class is ascertainable because the class members have already been positively identified and ascertained by Defendants through a search of their own business records.

### B. Numerosity Is Satisfied.

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. The Second Circuit has held that numerosity can be presumed if the class has at least forty members. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

In this matter, Defendants have identified 472 persons who meet the class definition. The 472 class members is well in excess of any minimum requirement imposed by Fed. R. Civ. P. 23

and the forty (40) member threshold imposed by the Second Circuit Court of Appeals. *See e.g*. Consol. Rail Corp, 47 F.3d at 483. Therefore, joinder of all class members is impracticable and the numerosity element is easily satisfied.

### C.  Commonality Is Satisfied.

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must "present evidence that a common factual nexus exists among the purported class." *See* Lewis Tree Serv., Inc. v. Lucent Techs., Inc., 211 F.R.D. 228, 232 (S.D.N.Y. 2002). However, the commonality requirement is to be "liberally construed." *See* Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (*quoting* Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992)).

The commonality standard does "not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs." Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 176 (S.D.N.Y. 2008). Rather, it "require[s] that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." Damassia, 250 F.R.D. at 156 (*quoting* Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 153 (S.D.N.Y. 2002)) (alteration omitted). The commonality requirement may be satisfied where plaintiffs' various alleged injuries "derive from a unitary course of conduct by a single system." *See* Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997).

Here, it is respectfully submitted that there is a unifying thread of common fact among the class members' claims which all resulted from a unitary course of conduct. Plaintiff's claim and those of the proposed class members all stem from the same conduct of Defendants. The claims at issue are all based on the same alleged practice of Eco Shield in adding a $15 fee to any account that they refer to a collection agency and Optio attempting to collect said $15 fee. The

common question of fact is that Plaintiff and all members of the class had a $15 fee added to their account and this fee was alleged to not be authorized by the underlying contract between that class member and Eco Shield or by law. Moreover, Plaintiff and all members of the proposed class also share a common question of law, in particular, whether the Eco Shield violated Section 349 of the GBL by adding the $15 fee and whether Optio violated Section 349 of the GBL and the Section 1692(f) of FDCPA by seeking to collect the $15 fee. The resolution of this action would rest on whether Defendants' conduct of adding and then seeking to collect an allegedly unauthorized $15 fee violated the GBL and FDCPA. As such, the class claims depend upon a common contention and a determination of whether the Defendants' practices violated the GBL and/or FDCPA will resolve the validity of each of the class members' claims in one stroke. Therefore, it is respectfully requested that this Court find the commonality requirement has been met.

### D.  Typicality Is Satisfied.

Rule 23(a)(3)'s typicality requirement mandates that the representative party's claims be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As is well recognized, "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A.,126 F.3d at 376 (*citing* Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982)). The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992). As with commonality, typicality is not defeated by "minor variations in the fact patterns underlying individual claims,"

as long as the wrong is alleged to have occurred in the same general fashion. <u>Robidoux v.</u> <u>Celani</u>, 987 F.2d 931, 936-37 (2d Cir. 1993).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subject to the same treatment as Plaintiff. Plaintiff's claim arises from the same event that gives rise to the claims of each of the class members (*i.e.*, having an allegedly improper $15 fee added to their account) and is based on the same legal theory (*i.e.*, that Eco Shield violated Section 349 of the GBL by adding the allegedly improper fee and Optio violated the FDCPA and GBL by seeking to collect the allegedly improper fee). Therefore, it is respectfully requested that this Court find that the typicality requirement has been met because each class members' claims arise from the same course of events as Plaintiff's and each class member will make the same legal argument to prove Defendants' liability as Plaintiff.

### E.  Adequacy Is Satisfied.

Rule 23(a)(4)'s adequacy requirement demands that the Court determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Supreme Court has stressed that this element "serves to uncover conflicts of interest between named parties and the class they seek to represent." <u>Amchem v. Windsor,</u> 521 U.S. 591, 625 (1997) Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Id</u>. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is evaluated in two ways: by looking to the qualifications of plaintiffs' counsel and by examining the interests of the named plaintiffs. *See* <u>Baffa v.</u> <u>Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000).

It is respectfully submitted that Plaintiff does not have any interests that are antagonistic to any of the class members. Plaintiff and the absent class members have suffered the same injury as a result of the identical conduct of Defendants. Plaintiff's claims are based on the same facts and circumstances as the claims of the class members they seek to represent. This fact coupled with the fact that Plaintiff has fully pursued this matter to a class action settlement, shows that Plaintiff takes his role as class representative very seriously. Finally, Defendants do not challenge Plaintiff's ability or qualifications to service as the class representative. Therefore, it is respectfully submitted that Plaintiff has met the adequacy requirement of Rule 23(a)(4) for certification of the class.

Generally, there is a presumption of competence for all members of the bar in good standing unless evidence to the contrary is presented. Plaintiff has retained counsel with substantial experience litigating claims of this type in class actions suits. Ryan Gentile has considerable experience representing plaintiffs in FDCPA class actions and in handling matters under the FDCPA. Furthermore, Mr. Gentile has been appointed as sole class counsel in previous FDCPA litigation. *See accompanying Declaration of Ryan Gentile* (the "Gentile Decl.") attached hereto. Ryan Gentile is an active practitioner whose experience, diligence, and commitment to this litigation will more than adequately protect the interest of the class. Therefore, it is respectfully submitted that Ryan Gentile is an adequate class counsel and should be appointed as class counsel under Rule 23(g).

Shimshon Wexler has considerable experience representing plaintiffs in FDCPA class actions and in handling matters under the FDCPA and GBL. Furthermore, Mr. Wexler has been appointed as sole class counsel in previous FDCPA and other class action litigation. *See accompanying Declaration of Shimshon Wexler* (the "Wexler Decl.") attached hereto. Shimshon

Wexler is an active practitioner whose experience, diligence, and commitment to this litigation will more than adequately protect the interest of the class. Therefore, it is respectfully submitted that Shimshon Wexler is an adequate class counsel and should be appointed as class counsel under Rule 23(g).

### F.  Common Questions of Law or Fact Predominate.

Federal Rule of Civil Procedure 23(b)(3) requires that "questions of law or fact common to the class" predominate over any questions affecting only individual members. "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Waggoner v. Barclays PLC, 875 F.3d 79, 83 (2d Cir. 2017) (quoting Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015)). This requirement is "far more demanding" than the commonality requirement under Rule 23(a). Amchem Prods., 521 U.S. at 623-24. Designed to test the proposed class's cohesiveness, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (internal quotations and citations omitted). This is a qualitative, not quantitative, inquiry, where the Court "must account for the nature and significance of the material common and individual issues in the case." In re Petrobras Sec.,862 F.3d 250, 271 (2d Cir. 2017).

In this matter, Defendants' conduct was common to all of the class members and all of the class members were harmed by Defendants' conduct. Class members and Plaintiff challenge the same allegedly improper action of adding a $15 fee to their account when it was referred to a collection agency and then seeking to collect said improper fee. Predominance is satisfied

because Plaintiff and the proposed class members all had the same allegedly improper $15 fee added to their account and then Defendants sought to collect the allegedly improper $15 fee. This creates the same legal issue, namely whether this action violates the GBL as to Eco Shield and the GBL and FDCPA as to Optio. Thus, the legal issues raised derive from a "common nucleus of operative fact" that underlies all the claims asserted in this case. Because Plaintiff and every class member's claim arises from this same factual nucleus, all claims uniformly turn on the same question of whether GBL and FDCPA liability flows from Defendants' actions described in the Amended Complaint [Doc. No. 21]. This question predominates over any questions related to individuals, and therefore, satisfies the Rule 23(b)(3) predominance requirement. Therefore, it is respectfully submitted that Plaintiff has sufficiently met the predominance requirement of Rule 23(b)(3).

### G.  A Class Action Is Superior To Other Methods To Adjudicate The Controversy.

To satisfy Rule 23(b)(3)'s superiority requirement, the party seeking certification must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) provides that "[t]he matters pertinent to these findings include, '(1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.'"

Regarding first two factors, the superiority required is established because no class member has demonstrated an interest in controlling the prosecution of the action because there are no other cases against Defendants involving the issues presented in this case by any proposed

class member. Regarding the third factor, Plaintiff respectfully submits that this forum is desirable because the proposed class contains New York residents only. For the fourth factor, it is respectfully submitted that there will be no difficult case-management issues because the facts and claims are very straightforward ones concerning the legality of an alleged standardized practice. This claim is significantly simpler than many other claims that are routinely certified as class actions, such as securities and price fixing cases.

For the reasons stated above, Plaintiff respectfully submits that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Adjudicating this case as a class action will promote judicial efficiency and provide relief to those with claims too small to justify individual lawsuits. Adjudicating this case as a class action is also a more efficient mechanism than filing and managing 472 individual lawsuits. Moreover, a class action ensures that the rights of class members, who are unaware that they possess a claim, or who cannot hire a lawyer, will receive justice. The vast majority of the proposed class members are undoubtedly unaware that their rights were violated, and this class action is the only means by which they will achieve any relief for the alleged conduct of the Defendants. Finally, this Court had previously held, "class action suits brought under the FDCPA 'regularly satisfy the superiority requirement of Rule 23.'" Maddon v. Midland Funding, LLC 237 F. Supp. 3d 130, 162 (S.D.N.Y. 2017)(quoting, In re Risk Mgmt. Alts., Inc., Fair Debt Collection Practices Act Litig., 208 F.R.D. 493, 507 (S.D.N.Y. 2002)(Maddon also certified a class under the GBL).

## H.  Conclusion.

For all the reasons stated above, it is respectfully submitted that the proposed class is ascertainable and meets all the requirements of Federal Rule of Civil Procedure 23(a)(1)-(4) and 23(b)(3). Therefore, Plaintiff respectfully requests that this Court certify the proposed class.

## II.    Standard For Preliminary Approval Of A Class Settlement.

Rule 23(e) requires that this Court make a preliminary determination of fairness for the

class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First,
> counsel submit the proposed terms of settlement and the judge makes a preliminary
> fairness evaluation. In some cases, this initial evaluation can be made on the basis of
> information already known, supplemented as necessary by briefs, motions, or informal
> presentations by the parties. If the case is presented for both class certification and
> settlement approval, the certification hearing and preliminary fairness evaluation can
> usually be combined. . . . The judge must make a preliminary determination on the
> fairness, reasonableness, and adequacy of the settlement terms and must direct the
> preparation of notice of the certification, proposed settlement, and date of the final
> fairness hearing. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see
> also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS
> ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and notice has been issued, the

Court then holds a final fairness hearing to show that the proposed settlement is truly fair,

reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34;

NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate

whether the proposed settlement was negotiated at arm's-length and is within the range of

possible litigation outcomes such that "probable cause" exists to disseminate notice and begin

the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

While a full fairness determination is not necessary at this early juncture, the Second

Circuit has identified nine factors for analyzing the reasonableness and adequacy of a class

action settlement, those factors, known as the *Grinnell factors*, are as follows: (1) the

complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the

class action through the trial; (7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the

attendant risks of litigation. *See* <u>City of Detroit v. Grinnell Corp</u>., 495 F.2d 448, 463 (2d Cir.

1974).

On December 1, 2018, Rule 23(e) of the Federal Rules of Civil Procedure was amended

to require the Court to consider several additional factors when deciding whether to approve a

class settlement, those factors are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i)     the costs, risks, and delay of trial and appeal;

> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2).

In this matter, as demonstrated below, the proposed settlement satisfies both

the <u>Grinnell</u> factors as well as the factors set forth in the newly amended Fed. R. Civ. P 23(e)(2).

### III. The Proposed Settlement Meets All The Requirements Set Forth In Grinnell As Well As The Factors Set Forth In Fed. R. Civ. P. 23(e)(2).

#### A. The Settlement Satisfies The Grinnell Factors.

##### 1. The First Grinnell Factor: The Complexity, Expense And Likely Duration Of The Litigation.

13

"This factor captures the probable costs, in both time and money, of continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 233 (3d Cir. 2001). "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." Yedlowski v. Roka, 2016 WL 6661336, at *12 (D.N.J. Nov. 10, 2016).

In this matter, the parties face significant costs in both time and money if the Court does not to approve this Settlement Agreement. In particular, the parties have engaged in contested litigation for more than one year, including a motion to dismiss and the exchanging of discovery demands and responses. While discovery was pending, Plaintiff and Defendants engaged in additional settlement negotiations culminating in the Settlement Agreement being reached. The settlement was reached after the exchange of multiple written settlement demands, and after multiple telephone calls concerning settlement. The settlement negotiations all involved counsel experienced with FDCPA and GBL litigation.

At this stage in the litigation liability has not been established, and as such, the parties would still need to litigate motions for summary judgment and possibly a trial as well as appeals. Furthermore, the likelihood of success for the class members if they proceeded to trial is uncertain. Defendants have raised several defenses to Plaintiff's individual claims which they aver would ultimately have defeated the claims of the Plaintiff and putative class.

Continuing this litigation would have resulted in delay and further expense. A trial and any post-judgment motions and appeals would have required further expenditure of both time and money. Absent a settlement, the costs incurred by continuing this litigation would likely have outweighed any potential recovery, particularly in light of the cap on statutory damages under the FDCPA and GBL, as discussed below. In addition, the delay inherent in further litigation would reduce the value of any potential recovery. On the other hand, the settlement

14

provides certain compensation to the class members now, rather than awaiting an eventual resolution that would result in further expense without any definite benefit to class members.

Settlement eliminates any further risk and expense for the Parties. Considering the potential risks and expenses associated with continued prosecution of the case, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, it is respectfully submitted that the proposed settlement is fair, reasonable, and adequate. Thus, this factor weighs in favor of the settlement.

**2. The Second Grinnell Factor: The Reaction Of The Class To The Settlement.**

This factor is premature as notices of the settlement have not been sent out to class members. Therefore, the reaction of the class to the settlement is unknown at this time and this factor should be revisited upon Plaintiff's motion for final approval of the settlement.

**3. The Third Grinnell Factor: The Stage Of The Proceedings And The Amount Of Discovery Completed.**

"The stage of the proceedings and the amount of discovery completed are evaluated to ensure that the parties "have a clear view of the strengths and weaknesses of their cases." In re Warner Comm. Sec. Litig., 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986). This litigation settled after a motion to dismiss was defeated and Defendants provided written discovery concerning the extent of the class, their net worth and other factors related to potential liability.

The discovery obtained was sufficient for Plaintiff's counsel to analyze the merits of the case and potential damages that could be awarded to the class before engaging in settlement negotiations. Through formal discovery and the litigation that has occurred to date, Plaintiff's Counsel had ample information to evaluate the prospects for the Class in terms of liability and

damages and to assess the fairness of the Settlement Agreement. In this case, both the knowledge

of Plaintiff and Plaintiff's Counsel, and the proceedings themselves, reached a stage where an

intelligent evaluation of the strengths and weaknesses of the Class's claims and the propriety of

the Settlement Agreement could be made. Therefore, it is respectfully submitted that this factor

weighs in favor of settlement.

### 4.   The Fourth And Fifth Grinnell Factors: The Risks Of Establishing Liability & The Risks Of Establishing Damages.

The fourth and fifth <u>Grinnell</u> factors also support preliminary approval. "Litigation

inherently involves risks," both in establishing liability and damages. <u>In re PaineWebber Ltd.</u>

<u>P'ships Litig.,</u> 171 F.R.D. 104, 126 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997). One

purpose of a settlement is to avoid the uncertainty of a trial on the merits.

It is respectfully submitted that both factors above weigh in favor of settlement.

Regarding establishing liability, Plaintiff would need to prove that Eco Shield violated the GBL

by adding the $15 fee – a claim that Eco Shield disputes. Plaintiff would need to prove that Optio

violated the FDCPA and GBL by seeking to collect debts which included said $15 fee – a claim

that Optio disputes. Indeed, Defendants have vigorously contested liability this entire case,

including filing a motion to dismiss. The proposed settlement eliminates any risk of the

uncertainty of a jury finding on liability. Thus, this factor weighs in favor of settlement.

Moreover, even if Plaintiff establishes liability, the amount of damages Plaintiff and the

class would be able to recover is uncertain. Actual damages were not plead or alleged in this

action, and therefore Plaintiff – and the class – would be limited to statutory damages. Statutory

damages for the class under the FDCPA are limited to a maximum of $500,000 or 1% of the net

worth of the Optio, whichever is less. *See* 15 U.S.C. § 1692k(a)(2)(B). Based on Optio's sworn

discovery responses regarding their net worth, the recovery of $46.75 per class member in the

16

Settlement Agreement represents more than what they could have received after winning at trial against Optio and being awarded maximum damages under the FDCPA. This fact demonstrates that the Settlement Agreement is not only fair to the class members, but it represents an excellent recovery for them over and above what they would be legally entitled to by law under the FDCPA.

Additionally, recovery under GBL 349(h) is limited to $50 in the absence of any pleaded actual damages. Therefore, the maximum damages each individual class member could recover under the GBL if liability was established would be $50. The $46.75 recovery represents a 93.5% recovery of their maximum damages, an excellent result under any circumstances.

Finally, as to recovery under both the FDCPA and GBL, the law in the Southern District of New York indicates only a single recovery is available.  *See* Woods v. Sieger, Ross & Aguire, LLC, 2012 WL 1811628 (S.D.N.Y. May 18, 2012) ("The fact that Plaintiff presented both state and federal theories of liability does not entitle her to separate recoveries for a single injury."); Shepherd v. Law Offices of Cohen LLP, 668 F. Supp. 2d 579, 582 (S.D.N.Y. 2009) ("[P]laintiff will not be able to recover statutory damages under both FDCPA and the GBL [because] that would violate the rule against double recovery for the same injury."). Therefore, class members could not recover statutory damages under both the FDCPA and GBL for the same injury resulting from a single event. Therefore, class members recovery would be limited to $50 under the GBL.

In addition to the arguments in the preceding paragraph, there is no guarantee of statutory damages under the FDCPA at trial because the FDCPA's damages provision is permissive rather than mandatory. That is, the law provides for statutory damages awards up to certain amounts - $1,000 for Plaintiff, and $500,000 or one percent of Defendant's net worth for the class – after

balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. See 15 U.S.C. § 1692k(b)(2). Accordingly, even had Plaintiff prevailed at trial, the jury may have awarded little in the way of statutory damages, or even none at all. *See* Schuchardt v. Law Office of Rory W. Clark, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risk and costs of continued litigation, the immediate reward to Class Members is preferable."). The risk of a minimal damages award is not hypothetical. *see* Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

Given the foregoing, the immediate relief provided by the Settlement Agreement is substantial, and a recovery of $22,159.70 - $46.75 per class member – represents an excellent recovery for the class. The settlement here compares favorably to other similar FDCPA class settlements approved in New York and throughout the country. *See, e.g.*, Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per class member), Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C., 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); Schell v. Frederick J. Hanna & Assocs., P.C., 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); Whitford v. Weber & Olcese, P.L.C., 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) ($10 per class member); Hall v. Frederick J. Hanna & Assocs., P.C., 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member).

### 5.  The Sixth Grinnell Factor: The Risks Of Maintaining The Class Action Through The Trial.

Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable. Prior to the Parties agreeing to settle this matter, Defendants expressed their intent to oppose class certification. Even if the Court were to grant a class certification motion, Defendants could seek to file an appeal under Fed. R. Civ. P. 23(f) or later move to decertify, which would require additional rounds of briefing and delay. Settlement eliminates the risk, expense and delay inherent in the litigation process including maintaining the class action through trial. *See* Campos v. Goode, 2011 WL 9530385, at *5 (S.D.N.Y. Mar. 2011). Thus, this factor weighs in favor of approving the Settlement Agreement.

### 6.  The Seventh Grinnell Factor: The Ability Of The Defendants To Withstand A Greater Judgment.

This factor is concerned with whether the Defendants could withstand a judgment for an amount significantly greater than the Settlement. A trial in this case would be expensive, and continued litigation, including summary judgment motions and possible appeals, would deplete Defendants' resources to pay any judgment or possible future settlement thereby making early settlement even more valuable to the proposed class members. As such, considering Defendants' net worth along with the uncertainties of trial and the possible difficulty in ultimately proving class liability and damages against Defendants, it is respectfully submitted that the proposed settlement is fair, reasonable, and adequate at satisfies the seventh Grinnell factor.

### 7.  The Eighth And Ninth Grinnell Factors: The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery & The Range Of Reasonableness Of The Settlement Fund To A Possible Recovery In Light Of All The Attendant Risks Of Litigation.

"It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." Grinnell, 495 F.2d at 455 n.2. "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quotation omitted). "[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. . . ." Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).

It is respectfully submitted that as demonstrated above, the settlement represents an excellent recovery to the class in light of the risks of continued litigation and the best possible recovery after winning at trial. Based on Optio's representations in discovery as to their net worth, even if the class members were awarded maximum damages under the FDCPA, they would still receive less than the $46.75 recovery they are receiving from the Settlement Agreement. Finally, the class members might not even be awarded maximum damages, but could only be awarded minimal damages by a jury. Thus this weighs in favor of preliminary approval of the settlement.

Regarding the GBL, as discussed above, the maximum recovery for each class member under the GBL is $50, and each class member is receiving $46.75 or 93.5% of their maximum damages. This recovery recognizes the uncertainties of law and fact in this case and establishing

20

liability and the concomitant risks and costs necessarily inherent in taking any litigation to completion. It is respectfully submitted that a 93.5% recovery of your maximum possible damages is an excellent outcome in any case and under any circumstances. The proposed settlement provides monetary relief to class members who, without class certification, would have received nothing. The proposed settlement allows class members to recover 93.5% of the monetary relief that they could at trial without the attendant risks of continued litigation. Accordingly, these factors weigh in favor of preliminary approval of the settlement.

B.  **The Proposed Settlement Satisfies The Factors Set Forth In Rule 23(e)(2).**

It is respectfully submitted that the factors for this Court to consider under Fed. R. Civ. 23(e)(2) have also been satisfied. First, it is respectfully submitted that Plaintiff and class counsel have adequately represented the class. As previously noted, Plaintiff's counsel has zealously litigating this case for over one year against sophisticated and experienced defense counsel. Plaintiff's counsel defeated a motion to dismiss, served and reviewed discovery responses, and negotiated a settlement all while working on a contingency fee basis. Similarly, Plaintiff has remained committed to this case and the class, and ultimately obtained an excellent recovery for class members. As a result, it is respectfully submitted that Plaintiff and his counsel have adequately represented the class.

With regard to the second factor, the proposed settlement was negotiated at arm's length by experienced counsel after over one year of litigation. There was no side deals or other collusion between the parties or their attorneys. With regard to the third factor, as demonstrated in detail *supra*, the relief provided in the settlement is adequate taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any

proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3), *i.e*, the Settlement Agreement which is attached as Exhibit A to the declaration of Ryan Gentile, Esq.

Finally, with regard to the fourth factor, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Each class member has the same claim resulting from Eco Shield adding a $15 fee to their account when it was referred to a collection agency and Optio seeking to collect the debt which included the $15 fee. As a result, the settlement provides that each participating class member will receive an equal portion of the settlement fund. Finally, the release affects each class member in the same way as each participating class member is agreeing to release the same claims. As such, this factor supports preliminary approval. *See* Hale v. State Farm Mutual Automobile Ins. Co., 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("this proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### C.  Conclusion.

The Grinnell factors as well as those set forth in Fed. R. Civ. P. 23(e)(2) all weigh in favor of approval of approving the Settlement Agreement. It is respectfully submitted that this settlement is fair, reasonable, and adequate and should be preliminarily approved by this Court.

**IV.      This Court Should Approve The Proposed Notice To Class Members.**

Under Rule 23(e)(1)(B), this Court must also "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. "[N]otice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts…." In re Wal-Mart Stores, Inc. Wage and Hour Litig., 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008).

Here, the parties have agreed to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the class. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and the claims asserted; (3) the binding effect of a judgment if the Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for statutory damages and reimbursement of their attorneys' fees and expenses; and (6) how to make inquiries. Fed R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312. The proposed notice is attached to the Settlement Agreement as **Exhibit 1**.

In short, this notice plan ensures that class members' due process rights are amply protected, and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

**V. This Court Should Schedule A Final Fairness Hearing.**

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at this hearing as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). Plaintiff respectfully request that this Court set a date for a final fairness hearing at the Court's convenience, approximately 120 days after the Court's preliminary approval of the settlement.

**CONCLUSION**

Plaintiff respectfully request that this Court enter the accompanying order granting preliminary approval to the parties' Settlement Agreement. As noted, Defendants do not oppose the relief requested herein.

Dated: Floral Park, New York
      February 19, 2021

                          /s/ Ryan Gentile
                By:_____
                          Ryan Gentile, Esq.
                          110 Jericho Turnpike, Suite 100
                          Floral Park, NY 11001
                          Tel: (201) 873-7675
                          rlg@lawgmf.com

                          /s/ Shimshon Wexler
                By:_____
                          Shimshon Wexler, Esq.
                           2244 Henderson Mill Road, Suite 108
                          Atlanta, GA 30345
                          swexleresq@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on February 19, 2021, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ Ryan Gentile

By:_____

Ryan Gentile, Esq.
110 Jericho Turnpike - Suite 100
Floral Park, NY 11001
Tel: (201) 873-7675
Fax: (516) 305-5566
rlg@lawgmf.com