UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Paul Quatinetz, individually and on behalf of a class<br><br>Plaintiff,<br><br>v.<br><br>Eco Shield Pest Control New York City, LLC; and Optio Solutions LLC<br><br>Defendants. | Civil Action No. 7:19-cv-08576-CS<br><br>**DECLARATION OF RYAN GENTILE IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENT** |

I, Ryan Gentile, of full age, hereby certify as follows:

1. I am an attorney at law admitted to practice before this Court. On March 24, 2021, this Court entered an Order certifying this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3) and, *inter alia*, appointing me as Class Counsel. [Doc. No. 36]. As such, I am fully familiar with all the facts set forth herein and state them to be true. I submit this Declaration in support of Plaintiff's Motion for Final Approval of the Class Action Settlement Agreement ("Settlement Agreement").

2. I have been admitted to practice law in the State of New Jersey since 2007 and the State of New York since 2008. I have remained a member in good standing of both bars since being admitted. I am also admitted to practice before the following Courts: Third Circuit Court of Appeals, Second Circuit Court of Appeals, District of New Jersey, Eastern District of New York, and Southern District of New York. My license to practice law has never been suspended or revoked by the State of New Jersey, New York, or any Court. There are no disciplinary proceedings pending against me in any jurisdiction and no discipline has previously been imposed on me in any jurisdiction.

3. I received my bachelor's degree from Gettysburg College in 2004 and graduated from New York Law School in May of 2007.

4. Since my graduation from law school, I have worked full time at the Law Offices of Gus Michael Farinella, PC. During my thirteen years as an attorney, I have primarily represented debtors in bankruptcy cases and individuals with claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA"). I am fully familiar with the FDCPA and all issues related class certification under Fed. R. Civ. P. 23. I have filed over One Hundred (100) FDCPA cases on behalf of consumers, including cases brought in the District of New Jersey, Eastern District of New York, and the Southern District of New York.

5. In addition to this case, I have been appointed as sole class counsel in the following previous FDCPA class action cases.

    i. *Henry A. Rojas vs. Law Offices of Clarfield, Okon, Salomone & Pincus, P.L.* Case No. 2:15-cv-03268-JMA-SIL (E.D.N.Y)

    ii. *Fequiere v. Milstead & Associates*, Case No. 1:15-cv-07541-RMB-AMD (D.N.J.)

    iii. *Cruckshank v. Freedom Mortgage Corporation,* Case No. 2:16-cv-00011-AYS (E.D.N.Y)

    iv. *Kausar v. GC Services Limited Partnership*, Case No. 2:15-cv-06027-ES-JAS (D.N.J.)

    v. *Phillips v. McKenna, Dupont, Higgins & Stone, PC*, Case No. 2:19-cv-12429-JMV-SCM (D.N.J.)

6. I have been appointed as joint class counsel with other attorneys in the following FDCPA class action litigation:

       i. *In re LVNV Funding LLC Fair Debt Collection Practices Act Litigation*, Case No. 2:16-cv-01117-SDW-SCM (D.N.J.)

7. I regularly attend webinars and other continuing legal education programs offered by the National Consumer Law Center, NACA, and other consumer advocate groups. The continuing education programs cover a variety of topics, including but not limited to, the FDCPA and other federal and state consumer protection statutes, attorney ethics, and in particular, class action litigation involving consumer protection statutes. I also subscribe to the National Consumer Law Center's treatises on the Fair Debt Collection Practices Act.

8. On March 24, 2021, this Court entered an Order preliminarily approving the Settlement Agreement and directing that notice of the settlement be served upon the Settlement Class members.

9. Attached hereto as **__Exhibit 1__** is the Affidavit of Kevin Lee who is a Case Manager for Phoenix Settlement Administrators ("Phoenix"), the claims administrator hired by the Parties. The following relevant facts are set forth in Mr. Lee's Affidavit:

    a. On April 14, 2021, notice of the settlement of this action was mailed to 472 Settlement Class members via First Class U.S. Mail, postage prepaid, with Electronic Service Requested. [Ex. 1, ¶ 5]

    b. As of June 14, 2021, a total of Three (3) notices were returned by the U.S. Postal Service with a forwarding address and were promptly re-mailed to the updated address affixed thereto via U.S. first class mail. [Ex. 1, ¶ 6]. Of the 472 notices mailed, all notices were delivered to the intended class member [Ex. 1, ¶ 7].

    c. As of June 14, 2021, no objections to the settlement or requests for exclusions from the settlement were received by First Class, Inc. [Ex. 1, ¶¶ 8 & 9].

10. In the notice sent to the Settlement Class members, they were advised that they had the right to opt-out of the Settlement Agreement provided that they put their request in writing and sent it to the Phoenix with a postmark of no later than June 7, 2021. As of June 16, 2021, Phoenix. received **zero** request for exclusion from the Settlement Class members. In the notice sent to the Settlement Class members, they were also advised that they had the right to object to the Settlement Agreement by June 7, 2021. As of June 16, 2021, no objections to the Settlement Agreement were submitted to the Clerk of the United States District Court for the Southern District of New York, nor were any objections served upon the Phoenix., Class Counsel, or Defendants' Counsel. Additionally, my office has not received any objection from any of the states' Attorneys General or from the United States Attorney General all of whom were provided the notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1715(b) ("CAFA"). In my professional opinion, I believe this strongly evidences the high quality and value of the Settlement Agreement and supports final approval, particularly given that these Attorneys General are charged with the responsibility of protecting consumers within their states/nation and regulating debt collectors such as the Defendants.

11. Furthermore, I believe the recovery of $46,95 per class member to be reasonable based on the fact that only statutory damages were sought in this matter, the method of calculating those statutory damages, and that a person may not recover statutory damages under the both the FDCPA and GBL for the same violation.

12. Fed. R. Civ. P. 23(h) provides, in part, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." I respectfully submit that such fees and costs are authorized by law pursuant to 15 U.S.C. §

1692k(a)(3), and by the Parties' Settlement Agreement. Following the filing of a motion to certify this case as a class action, the Parties engaged in settlement negotiations which culminated in the Settlement Agreement. As a part of the Settlement Agreement, Defendant agreed to pay Class Counsel Forty Thousand ($40,000.00) dollars for their reasonable fees and costs incurred in this action. [*See* Doc. No. 33-2, pg. 18 at ¶ 39.2]. The Parties did not resolve the issue of attorneys' fees and costs until after they had first resolved the other material terms of the Settlement Agreement. Aside from the Settlement Agreement, there are no other agreements or understandings between Plaintiff and Defendants or their respective counsel. Finally, all of Class Counsel's attorneys' fees and costs are to be paid by Defendants separate from the Settlement Fund, and therefore the attorneys fee payment will not in any way dilute the recovery for each Settlement Class member.

13. As of April 14, 2021, I had expended a total of 84.6 hours of time on this matter, which does not include preparation for, or attendance at, the fairness hearing, nor drafting this motion for final approval, nor the drafting of the Motion for Attorneys' Fees. As of February 18, 2021, Shimshon Wexler had expended a total of 42.3 hours on this matter, which does not include preparation for, or attendance at, the fairness hearing, nor his review of this motion for final approval or the Motion for Attorneys' Fees. Based on the hourly rate for my work that I am seeking in this matter ($450 per hour), the gross attorneys' fees related to my work is $38,070. Based on the hourly rate that Shimshon Wexler is seeking in this matter ($400 per hour), the gross attorneys' fees related to his work is $16,920. Additionally, Shimshon Wexler has incurred $650.10 in costs for filing fees, process service fees, and court transcript fees. Based on my hourly rate and

Shimshon Wexler's hourly rate and the fees and costs incurred, the total fees and costs are $55,640.10. However, based on my experience, I expect to expend at least an additional 5 hours of time in concluding this case (*e.g.*, preparation and attendance at the fairness hearing, continued class member inquiries, and follow up with the Class Administrator regarding disbursements). When accounting for the extra 5 hours, the total adjusted fees and costs total $57,890.10. This amount is more than the $40,000 that the Parties agreed in the Settlement Agreement would be paid by Defendants to Class Counsel for our fees and costs.

14. Among other things, I expended significant time in this Action with respect to the following tasks: research into the claims, drafting the amended complaint, opposing the Defendants' Motion to Dismiss, drafting the joint discovery plan, drafting and serving discovery demands, answering Defendant's discovery demands, negotiating and drafting the Settlement Agreement, drafting and filing the Motion for Preliminary Certification, drafting the notice that was mailed to the Settlement Class members, drafting the Motion for Attorneys' Fees, and drafting and filing this Motion for Final Approval.

15. A large portion of the legal work I perform involves contingent fee litigation representing plaintiffs in FDCPA matters. FDCPA cases are subject to fee shifting provisions under 15 U.S.C. §1692k(a). I regularly represent plaintiffs in FDCPA matters in Federal Courts in New Jersey and New York. I frequently work with other FDCPA plaintiff's lawyers and, in that regard, I am generally familiar with the range of hourly fees charged by other plaintiff's lawyers in FDCPA matters.

16. I respectfully submit that my hourly rate of $450 sought herein, is fair, reasonable, and consistent with rates awarded in this District to other attorneys with similar knowledge

and experience. The fees are also fair and reasonable and considering the risks inherent in bringing and prosecuting cases such as this one.

17. The hourly rate of $450 sought herein is consistent with the rates charged by the Law Offices of Gus Michael Farinella to the firm's hourly paying clients for my work. My hourly rate is adjusted annually by the Law Offices of Gus Michael Farinella, PC to account for inflation and increasing experience, however my rate of $450 per hour has not yet been adjusted for 2021. Additionally, my rates are consistent with the rates charged by attorneys of comparable experience and expertise in FDCPA cases in the various District Courts where I have appeared for class action litigation, including the Eastern District of New York, Southern District of New York, and the District of New Jersey. Additionally, the hourly rate of $450 is consistent with what has been awarded to me by Courts in the District of New Jersey in the past two years.

18. The hourly rate charged by the Law Offices of Gus Michael Farinella, PC for my work includes many factors beyond compensation, including non-billed office personnel, equipment, insurance, research materials, office supplies, other overhead expenses, and forbearance of other cases. Consumer litigation inevitably involves suing large corporations, which have the capacity to bring enormous resources to bear that individual consumers are unable to meet on their own. In this case, as of today, I have worked for over one year on this matter without compensation. If plaintiffs' attorneys are not compensated at a rate that allows them to maintain the technological as well as intellectual and professional resources-to match corporate defendants' resources, consumers will be unable to find qualified counsel to represent them. Few attorneys have the means, ability, or desire to take these cases, and if those that do so are not

compensated at a rate which allows them the chance of prevailing on behalf of consumers, these cases will not be brought; and the remedial purpose of this legislation will fail.

19. The average consumer does not have funds to litigate this type of case. Therefore, in further justification of our fees, I note that the Law Offices of Gus Michael Farinella, PC advances all litigation costs in FDCPA and GBL cases, and does not charge our clients anything for these costs. If the case is lost, we simply do not get paid.

20. Finally, I respectfully submit that Paul Quatinetz should be entitled to an incentive award of $500 in addition to his $1,000 award of statutory damages. In this matter, Mr. Quatinetz was instrumental in the prosecution of his claims on behalf of the Settlement Class. He was engaged during the entire litigation process and provided valuable assistance to Class Counsel for entire time that this case was pending. This assistance included: (1) submitting to interviews with Class Counsel; (2) providing Class Counsel with documents and information, including responses to discovery demands and other documents necessary to prosecute this matter; (3) participating in conferences with Class Counsel; and (4) conferring with Class Counsel regarding the parameters of any proposed settlement. This matter could not have been as successful as it was without the active involvement and Mr. Quatinetz throughout. Accordingly, and in recognition of the substantial benefit she conferred on the Settlement Class and her efforts generally over the past year, it is respectfully submitted an incentive award of $500 to Plaintiff in addition to his statutory damage award of $1,000 is entirely appropriate.

*In accordance with 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 16th Day of June 2021.*

/s/ Ryan Gentile
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Telephone: (201) 873-7675
Facsimile: (516) 305-5566
E-Mail: rlg@lawgmf.com
*Attorney for Plaintiff, Paul Quatinetz and the Class*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Paul Quatinetz, individually and on behalf of a class<br><br>                  Plaintiff,<br>      v.<br><br>Eco Shield Pest Control New York City, LLC; and Optio Solutions LLC<br><br><br>                 Defendants. | Civil Action No. 7:19-cv-08576-CS<br><br>**DECLARATION OF KEVIN LEE WITH RESPECT TO SETTLEMENT NOTICE PROCESS** |

**<u>DECLARATION OF KEVIN LEE</u>**

2   I, Kevin Lee, declare as follows:

3       1.     I am a Case Manager at Phoenix Settlement Administrators (PSA), the Court-appointed Class Action Settlement Administrator for *Quatinetz v. Eco Shield Pest Control New York City, LLC.* I have personal knowledge of the facts stated herein and, if called upon to testify, I could and would testify competently to such facts.

       2.     PSA was selected by the Parties to provide notice of the Settlement and class administration duties in this action. Pursuant to the Settlement Agreement for this matter, PSA was responsible for (i) printing and mailing the *Notice of Class Action Settlement* (herein referred to collectively as the "Notice Packet"); (ii) responding to inquiries from Class Members; (iii) determining the validity of opt-outs; (iv) calculating the Net Settlement Amount and the Individual Settlement payments; (v) issuing the Individual Settlement Payment checks and distributing them to Participating Class Members; (vi) issuing the payment to Class Counsel for attorneys' fees and costs, the Enhancement check to Named Plaintiff; and (vii) such other tasks as set forth in the Agreement or as the Parties mutually agree or as the Court orders.

       3.     On March 25, 2021, PSA received a data file from Defense Counsel that contained names and last known mailing addresses for each Class Member during the Class Period. The final mailing list contained four hundred seventy-two (472) Class Members.

       4.     On April 14, 2021, PSA conducted a National Change of Address (NCOA) search in an attempt to update the class list of addresses as accurately as possible. A search of this database provides updated addresses for any individual who has moved in the previous four (4) years and notified the U.S. Postal Service of their change of address.

       5.     On April 14, 2021, PSA mailed the Notice Packet via U.S. first class mail, in English to all four hundred seventy-two (472) Class Members on the Class List. A true and correct copy of the mailed Notice Packet is attached hereto as **Exhibit A**.

       6.     As of the date of this declaration, three (3) Notice Packets have been returned to PSA. All three (3) were returned with a forwarding address, and were promptly re-mailed to the updated address affixed thereto via U.S. first class mail.

7. As of the date of this declaration, zero (0) Notice Packets are considered undeliverable.

8. PSA has received <u>zero (0) Request for Exclusion</u> (*i.e.* "Opt-Out's"). The deadline for Class Members to submit an "Opt-Out" request was June 7, 2021.

9. PSA has received <u>zero (0) Objections</u> to the Settlement. The deadline for Class Members to submit an "Objection" to the Settlement was June 7, 2021.

10. As of the date of this declaration, there are four hundred seventy-two (472) Class Members, representing 100% of the Class, who having not requested exclusion, are deemed Participating Class Members.

11. Pending Court approval, Defendants are to pay $22,159.70 to cover payments to each Participating Class Member, PSA's administrative fees ($4,995.00), and a Class Representative Enhancement Award to Plaintiff Quatinetz ($1,500.00), totaling $28,655.40 ("Settlement Fund"). Pursuant to the Settlement Agreement, all Class Members are to receive an equal share of the Settlement Fund. Accordingly, each of the four hundred seventy-two (472) Class Members will receive approximately $46.95 ($22,159.70 / 472 Class Members). No tax deductions will be made, since the payments shall be classified as 100% Penalties.

12. PSA's costs associated with the administration of this matter are $4,995.00. This includes all costs incurred to date, as well as estimated costs involved in completing the settlement distribution. A true and correct copy of the invoice from PSA is attached hereto as **Exhibit B**.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this 14th day of June 2021, at Orange, California.

_____
KEVIN LEE

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
Paul Quatinetz, individually and on behalf          Civil Action No. 7:19-cv-08576-CS
of a class

                Plaintiffs,

      v.

Eco Shield Pest Control New York City,
LLC; and Optio Solutions LLC

                Defendants.
-------------------------------------------------------X

## <u>NOTICE OF CLASS ACTION SETTLEMENT</u>

**You have been identified by Eco Shield Pest Control New York City, LLC and Optio Solutions LLC as a potential member of a class.**

*A Federal Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer, and you are <u>not</u> being sued.*

**IF ECO SHIELD PEST CONTROL NEW YORK CITY, LLC AND/OR OPTIO SOLUTIONS LLC SOUGHT TO COLLECT A COLLECTION FEE FROM YOU BETWEEN SEPTEMBER 16, 2016 AND SEPTEMBER 16, 2019, A CLASS ACTION SETTLMENT MAY AFFECT YOUR RIGHTS.**

- A consumer sued Eco Shield Pest Control New York City, LLC ("Eco Shield") and Optio Solutions LLC ("Optio")(collectively the "Defendants") alleging that the companies sought to collect fees on Eco Shield accounts that were not legally due and owing in violation of New York's General Business Law ("GBL") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

- The Court certified a class of persons in New York that Defendants attempted to collect and/or asserted a right to collect, a collection fee from, in addition to any amount Eco Shield claimed such individual owed them, from September 16, 2016 through September 16, 2019.

- A settlement will provide $22,159.70 (the "Fund") to fully settle and release claims of persons in the Class who participate in the settlement.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | **If you do nothing, you will receive $46.95, but you will give up your rights to sue Defendants for the claims resolved in this case.** |
| **ASK TO BE EXCLUDED** | This is the only option that allows you to sue Defendants on your own regarding the legal claims in this case, but you will not receive a settlement payment. The deadline for excluding yourself is **June 7, 2021.** |
| **OBJECT TO THE SETTLEMENT** | Write to the Court about why you do not like the settlement. The deadline for objecting is **June 7, 2021.** |

- Your options are explained in this Notice. To object or ask to be excluded, you must act before **June 7, 2021.**

- The Court in charge of this case still must decide whether to approve the settlement. Settlement payments will be made if the Court approves the settlement, and after any appeals are resolved. Please be patient.

- **Any Questions? Read on.**

## 1. Why should I read this notice?

If Eco Shield and/or Optio on behalf of Eco Shield sought to collect a debt from you that included a collection fee or other similar charge between September 16, 2016 and September 19, 2019, a class action lawsuit may affect you. You have legal rights and options that you may exercise before the Court holds a hearing to approve any settlement agreement. The Honorable Judge Cathy Seibel of the United States District Court for the Southern District of New York is overseeing this class action. The lawsuit is known as *Quatinetz v. Eco Shield Pest Control New York City, LLC; and Optio Solutions LLC*, Case No. 7:19-cv-08576-CS

## 2. What is this lawsuit about?

This lawsuit is about whether Eco Shield's actions of allegedly adding collection fees to consumers' accounts violated the GBL and whether Optio's actions in seeking to collect debts on behalf of Eco Shield that included the collection fees violated the FDCPA and GBL. You have been identified by Defendants as one of the persons who had a collection fee added to their account with Eco Shield.

## 3. What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" sue on behalf of other people who have similar claims. In this case, the Class Representative is Paul Quatinetz. The people who the Class Representative represents are a "Class" or "Class Members." The entity that the Class Representative sued – Eco Shield and Optio are called the "Defendants" in this case. One court resolves the issues for everyone in the class – except for those people who choose to exclude themselves from the class.

## 4. Why is this lawsuit a class action?

The Court decided that this lawsuit can be certified as a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that:

- The class is so numerous that combining the claims of all class members in one case would be impracticable;
- There are legal questions and facts that are common to each of the members of the class;
- The Class Representative's claims are typical of the claims of the members of the class;
- The Class Representative and the lawyers representing the class will fairly and adequately represent the interests of all class members;
- The common legal questions and facts predominate over questions that affect only individuals; and
- This class action will be more efficient than having many individual lawsuits

More information about why the Court is allowing this lawsuit to be a class action is in the Court's Preliminary Order Approving the Class Action Settlement Agreement, which is available at https://www.pacer.gov/, through the Clerk of Court, United States District Court for the Southern District, and/or by contacting Class Counsel, Ryan Gentile, at (201) 873-7675 or at rlg@lawgmf.com or Shimshon Wexler at 212-760-2400 or swexleresq@gmail.com.

## 5. What does the lawsuit complain about?

In the lawsuit, the Class Representative alleges that Eco Shield added a collection fee of $15 to any account that was referred by Eco Shield to a collection agency, including but not limited to Optio. The Class Representative alleges that this action is in violation of the GBL because the underlying contract that Eco Shield has with its customers does not permit Eco Shield to add any collection fee or other similar charge to any account nor does any legal statute. The Class Representative also alleges that Optio violated the FDCPA when it sought to collect this $15 fee from consumers on behalf of Eco Shield because the fee was not legally chargeable to or owed by those consumers to Eco Shield.

## 6. How do the Defendants answer the allegations?

Defendants both deny that they did anything wrong and assert a number of defenses in their respective answers. Specifically, Eco Shield's answer denies that its actions violated the GBL and asserts eight affirmative defenses including but not limited to the Plaintiff lacks standing to bring the claim, failed to mitigate damages, and the claim was barred in part by the applicable statute of limitations. Optio's answer denies that its actions violated the FDCPA and asserts nine affirmative defenses including but not limited to the Plaintiff lacks standing to bring the claim, any violations of the FDCPA were result of a bona fide error, and that the Plaintiff failed to mitigate his damages.

## 7. Why is there a settlement?

The Court did not decide in favor of the Class Representative or Defendants. The Class Representative thinks he could have won at trial, and Defendants believe that the Class Representative would not have won at trial. But there was no trial. Instead, both sides agreed to this settlement. That way, they avoid the risk and cost of a trial, and the class members will receive compensation. The Class Representative and his attorneys think the settlement is best for all class members.

## 8. What does the settlement provide?

Defendants will create a Fund of $22,159.70, which will cover payments of approximately $46.95 to each of those class members who do not timely exclude themselves from the settlement. Defendants will separately pay: (1) the reasonable costs and expenses of administrating the class action settlement, (2) $1,500 for the Class Representative, and reasonable attorneys' fees and costs to counsel for the Class Representative not to exceed $40,000, subject to the Court's approval.

## 9. Am I a part of the Class?

Defendants' records indicate that you *may* be a member of the class. You need to determine whether you are affected by this lawsuit. The Court certified the following class:

(a) all individuals (b) with a New York address (c) from whom Defendants attempted to collect and/or asserted a right to collect, a collection fee in addition to any amount Eco Shield claimed such individual owed them (d) from September 16, 2016 through September 16, 2019.

## 10. Why would I ask to be excluded?

If you already filed your own lawsuit against Eco Shield and/or Optio regarding the practices at issue in this case and want to continue with it, you need to ask to be excluded from the class. You may also want to be excluded if you do not agree with the allegations raised by the Class Representative and do not wish to be part of this lawsuit. If you exclude yourself from the class – which also means to remove yourself from the class, and is sometimes called "opting-out" of the class – you will not get any money or benefits from this settlement of the lawsuit. However, you may then be able to sue or continue to sue Eco Shield and/or Optio regarding the practices alleged above. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

If you start your own lawsuit against Eco Shield and/or Optio regarding their practices alleged above after you exclude yourself, you may have to hire and pay your own lawyer for that lawsuit, and you will have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against Eco Shield and/or Optio you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

## 11. How do I ask the Court to exclude me from the Class?

To ask to be excluded, you must send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from *Quatinetz v. Eco Shield Pest Control New York City, LLC et al*, Case No. 7:19-cv-08576-CS. You should keep a copy of this exclusion letter for your records. To be effective your written request for exclusion must state your full name, address, and phone number, and email address (if available), along with a statement that you wish to be excluded from *Quatinetz v. Eco Shield Pest Control New York City, LLC et al.*, Case No. 7:19-cv-08576-CS and you must sign the letter. You must mail your Exclusion Request postmarked by June 7, 2021 to: Phoenix Settlement Administrators, PO Box 7208, Orange, CA 92863. The Court will exclude from the class any member who requests exclusion.

## 12. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the settlement. You can object only if you stay in the settlement. Excluding yourself means that you do not want to be part of the settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

## 13. How do I tell the Court that I do not agree with the settlement?

If you are a Class Member, you can object to the settlement or any part of the settlement that you think the Court should reject, and the Court will consider your views.

To object, you must send a letter saying that you object to the settlement in *Quatinetz v. Eco Shield Pest Control New York City, LLC et al.*. Be sure to include (a) your full name, address, telephone number and email address (if available); (b) state the grounds for your objection, as well as identify any documents that you desire the Court to consider, and (c) state whether you intend to appear at the fairness hearing on your own or through counsel. In order to be valid, objections must be mailed to the attorneys listed below, and to the Court, **postmarked no later than June 7, 2021.**

Ryan Gentile, Esq.
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001

Aaron Lloyd, Esq.
Greenberg Traurig, P.A.
2375 E. Camelback Road – Suite 700
Phoenix, AZ 85016

Shimshon Wexler, Esq.
S. Wexler, LLC
2244 Henderson Mill Road, Suite 108
Atlanta, GA 30345

Brendan H. Little, Esq.
Lippes Mathias Wexler Friedman LLP
50 Fountain Plaza – Suite 1700
Buffalo, NY 14202

Clerk of the Court
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

## 14. Do I have a lawyer in this case?

The Court appointed Ryan Gentile, Esq. of the law firm Law Offices of Gus Michael Farinella, P.C., of Floral Park, New York and Shimshon Wexler, Esq. of S. Wexler LLC of Atlanta, Georgia to represent all class members, including you if you qualify as a member of the class as defined in this Notice. Ryan Gentile, Esq. and Shimshon Wexler, Esq. are called "Class Counsel." Ryan Gentile, Esq. and Shimshon Wexler, Esq. are both experienced in handling similar class action cases. More information about Ryan Gentile, Esq. and Law Offices of Gus Michael Farinella, P.C., its practice, and its lawyers' experience, is available at www.lawgmf.com. If you qualify as a class member as defined in this Notice, you do not have to pay Ryan Gentile, Esq., Law Offices of Gus Michael Farinella, P.C. or Shimshon Wexler, Esq. for representing you. Class counsel will seek an award, to be approved by the Court, of attorneys' fees to be paid by Defendants separate and apart from the Fund. Ryan Gentile may be reached at 201-873-7675 and Shimshon Wexler may be reached at 212-760-2400.

## 15. Should I get my own lawyer?

If you qualify as a class member as defined in this notice, you do not need to hire your own lawyer because Class Counsel is working on your behalf. A class member may enter an appearance through an attorney if the member so desires. A class member may choose his or her own attorney who must enter an appearance with the Court. If you want your own lawyer, you are free to hire one at your own expense.

## 16. How will Class Counsel be paid?

Class Counsel will ask the Court to approve the payment of their attorneys' fees, costs, and expenses up to $40,000. The fees will pay Class Counsel for investigating the facts, litigating the case, negotiating the settlement, and obtaining approval of the settlement. The Court may award less than the amount sought by Class Counsel. Any attorneys' fees and costs awarded to Class Counsel will be paid separate and apart from the Fund and thus will not diminish the Fund or Class Members' payments from the Fund.

## 17. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing at 3:30 p.m. on July 16, 2021, at the United States District Court for the Southern District of New York, White Plains Division located at 300 Quarropas St, White Plains, NY 10601 in Courtroom 621. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are valid objections, the Court will consider them and will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel.

You do not need to attend the final approval hearing. Class Counsel will appear on behalf of the Class. But, you are welcome to come, or have your own lawyer appear at your expense.

## 18. May I speak at the hearing?

You may ask the Court for permission to speak at the Final Approval Hearing,

## 19. How do I get more information on the settlement?

This notice is only a summary of the proposed settlement. You can request a copy of the complete Settlement Agreement and obtain additional information regarding this settlement by contacting Class Counsel, Ryan Gentile, at (201) 873-7675 or at rlg@lawgmf.com or Shimshon Wexler at 212-760-2400 or swexleresq@gmail.com.

All pleadings and documents filed with the Court may be reviewed or copied in the Clerk of Court, United States District Court for the Southern District of New York. Court documents are also available through https://www.pacer.gov/.

**DO NOT CALL OR WRITE THE COURT FOR INFORMATION OR ADVICE**

Dated: April 14, 2021

BY ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK

# Exhibit B



**CASE ASSUMPTIONS**

| | |
|---|---|
| Class Members | 472 |
| Opt Out Rate | 0% |
| Opt Outs Received | 0 |
| Total Class Claimants | 472 |
| Subtotal Admin Only | **$4,961.58** |
| **WILL NOT EXCEED** | **$4,995.00** |
| **For 472 Class Members** | |

**June 14, 2021**

## Case: Quatinetz v. EcoShield Pest Control NYC, LLC

**Phoenix Contact: Kevin Lee**

**Contact Number: 949.566.3490**

**Email: kevin@phoenixclassaction.com**

| Case & Database Setup / Toll Free Setup & Call Center / NCOA (USPS) | | | |
|---|---|---|---|
| **Administrative Tasks:** | **Rate** | **Hours/Units** | **Line Item** |
| Programming Manager | $100.00 | 1 | $100.00 |
| Programming Database & Setup | $100.00 | 1 | $100.00 |
| Toll Free Setup* | $63.48 | 1 | $63.48 |
| Call Center & Long Distance | $1.50 | 47 | $70.80 |
| NCOA (USPS) | $125.00 | 1 | $125.00 |
| | | **Total** | **$459.28** |

| Data Merger & Scrub / Notice Packet, Opt-Out Form & Postage / Spanish Translation / Website | | | |
|---|---|---|---|
| **Project Action** | **Rate** | **Hours/Units** | **Line Item** |
| Notice Packet Formatting | $100.00 | 1 | $100.00 |
| Data Merge & Duplication Scrub | $0.15 | 472 | $70.80 |
| Notice Packet & Opt-Out Form | $1.75 | 472 | $826.00 |
| Postage (up to 2 oz.)* | $0.70 | 472 | $330.40 |
| | | **Total** | **$1,327.20** |



### Skip Tracing & Remailing Notice Packets / Tracking & Programming Undeliverables

| Project Action: | Rate | Hours/Units | Line Item |
|---|---|---|---|
| Case Associate | $50.00 | 2 | $100.00 |
| Skip Tracing Undeliverables | $1.00 | 3 | $3.00 |
| Remail Notice Packets | $1.75 | 6 | $10.50 |
| Postage | $0.70 | 6 | $4.20 |
| Programming Undeliverables | $50.00 | 2 | $100.00 |
| | | **Total** | **$217.70** |

### Database Programming / Processing Opt-Outs, Deficiencies or Disputes

| Project Action: | Rate | Hours/Units | Line Item |
|---|---|---|---|
| Programming Claims Database | $100.00 | 1 | $100.00 |
| Non Opt-Out Processing | $100.00 | 1 | $100.00 |
| Case Associate | $55.00 | 1 | $55.00 |
| Opt-Outs/Deficiency/Dispute Letters | $5.00 | 12 | $59.00 |
| Case Manager | $75.00 | 2 | $150.00 |
| | | **Total** | **$464.00** |

### Calculation & Disbursement Programming/ Create & Manage QSF/ Mail Checks

| Project Action: | Rate | Hours/Units | Line Item |
|---|---|---|---|
| Programming Calculations | $100.00 | 1 | $100.00 |
| Disbursement Review | $100.00 | 1 | $100.00 |
| Programming Manager | $100.00 | 1 | $100.00 |
| QSF Fees, Bank Account & EIN 3 Yrs | $75.00 | 1 | $75.00 |
| Check Run Setup & Printing | $100.00 | 2 | $200.00 |
| Mail Class Checks | $1.50 | 472 | $708.00 |
| Estimated Postage Checks | $0.55 | 472 | $259.60 |
| | | **Total** | **$1,542.60** |



| Tax Reporting & Reconciliation / Re-Issuance of Checks / Conclusion Reports and Declarations | | | |
|---|---|---|---|
| **Project Action:** | **Rate** | **Hours/Units** | **Line Item** |
| Case Supervisor | $100.00 | 1 | $100.00 |
| Remail Undeliverable Checks (Postage Included) | $1.50 | 47 | $70.80 |
| Case Associate | $55.00 | 1 | $55.00 |
| Reconcile Uncashed Checks | $75.00 | 1 | $75.00 |
| Conclusion Reports | $100.00 | 1 | $100.00 |
| Case Manager Conclusion | $75.00 | 1 | $75.00 |
| Final Reporting & Declarations | $125.00 | 1 | $125.00 |
| IRS   Annual Tax Reporting * | $350.00 | 1 | $350.00 |
| | | **Total** | **$950.80** |

| | **Invoice Total:** | **$4,961.58** |
|---|---|---|



## **TERMS AND CONDITIONS**

**Provisions:** The case estimate is in good faith and does not cover any applicable taxes and fees. The estimate does not make any provision for any services or class size not delineated in the request for proposal or stipulations. Proposal rates and amounts are subject to change upon further review, with Counsel/Client, of the Settlement Agreement. Only pre-approved changes will be charged when applicable. No modifications may be made to this estimate without the approval of PSA (Phoenix Settlement Administrators). All notifications are mailed in English language only unless otherwise specified. Additional costs will apply if translation into other language(s) is required. Rates to prepare and file taxes are for Federal and California State taxes only. Additional charges will apply if multiple state tax filing(s) is required. **Pricing is good for ninety (90) days.**

**Data Conversion and Mailing:** The proposal assumes that data provided will be in ready-to-use condition and that all data is provided in a single, comprehensive Excel spreadsheet. PSA cannot be liable for any errors or omissions arising due to additional work required for analyzing and processing the original database. A minimum of two (2) business days is required for processing prior to the anticipated mailing date with an additional two (2) business days for a National Change of Address (NCOA) update. Additional time may be required depending on the class size, necessary translation of the documents, or other factors. PSA will keep counsel apprised of the estimated mailing date.

**Claims:** PSA's general policy is to not accept claims via facsimile. However, in the event that facsimile filing of claims must be accepted, PSA will not be held responsible for any issues and/or errors arising out of said filing. Furthermore, PSA will require disclaimer language regarding facsimile transmissions. PSA will not be responsible for any acts or omissions caused by the USPS. PSA shall not make payments to any claimants without verified, valid Social Security Numbers. All responses and class member information are held in strict confidentiality. Additional class members are $10.00 per opt-out.

**Payment Terms:** All postage charges and 50% of the final administration charges are due at the commencement of the case and will be billed immediately upon receipt of the data and/or notice documents. PSA bills are due upon receipt unless otherwise negotiated and agreed to with PSA by Counsel/Client. In the event the settlement terms provide that PSA is to be paid out of the settlement fund, PSA will request that Counsel/Client endeavor to make alternate payment arrangements for PSA charges that are due at the onset of the case. The entire remaining balance is due and payable at the time the settlement account is funded by Defendant, or no later than the time of disbursement. Amounts not paid within thirty (30) days are subject to a service charge of 1.5% per month or the highest rate permitted by law.

### **Tax Reporting Requirements**

PSA will file the necessary tax returns under the EIN of the QSF, including federal and state returns. Payroll tax returns will be filed if necessary. Under the California Employment Development Department, all taxes are to be reported under the EIN of the QSF with the exception of the following taxes: Unemployment Insurance (UI) and Employment Training Tax (ETT), employer-side taxes, and State Disability Insurance (SDI), an employee-side tax. These are reported under Defendant's EIN. Therefore, to comply with the EDD payroll tax filing requirements we will need the following information:

1. Defendant's California State ID and Federal EIN.

2. Defendant's current State Unemployment Insurance (UI) rate and Employment Training Tax (ETT) rate. This information can be found in the current year DE 2088, Notice of Contribution Rates, issued by the EDD.

3. Termination dates of the class members, or identification of current employee class members, so we can account for the periods that the wages relate to for each class member.

4. An executed Power of Attorney (Form DE 48) from Defendant. This form is needed so that we may report the UI, SDI, and ETT taxes under Defendant's EIN on their behalf. If this form is not provided we will work with the EDD auditors to transfer the tax payments to Defendant's EIN.

5. Defendant is responsible for reporting the SDI portion of the settlement payments on the class member's W-2. PSA will file these forms on Defendant's behalf for an additional fee and will issue an additional W-2 for each class member under Defendant's EIN, as SDI is reported under Defendant's EIN rather than the EIN of the QSF. The Power of Attorney (Form DE 48) will be needed in order for PSA to report SDI payments.